IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ABB TURBO SYSTEMS AG and ABB INC., <br><br> Plaintiffs, <br><br> v. <br><br> TURBONED SERVICE B.V. and TURBOUSA, INC., <br><br> Defendants. | COMPLAINT FOR PATENT INFRINGEMENT <br><br><br> CIVIL ACTION NO. _____ <br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT OF PLAINTIFFS ABB TURBO SYSTEMS AG AND ABB INC. FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT OF PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL
(INJUNCTIVE RELIEF SOUGHT)**

Plaintiffs ABB Turbo Systems AG and ABB Inc. (collectively, "ABB") make the following allegations and averments for their Complaint for Patent Infringement and Declaratory Judgment of Patent Infringement against Defendants TurboNed Service B.V. ("TurboNed") and TurboUSA, Inc. ("TurboUSA"):

## PARTIES

1. ABB Turbo Systems AG is a corporation organized under the laws of Switzerland, with its principal place of business at Bruggerstrasse 71a, CH-5401 Baden, Switzerland.

2. ABB Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 12040 Regency Parkway, Cary, North Carolina 27518.

3. Upon information and belief, TurboNed Service B.V. is a limited liability company organized under the laws of the Netherlands, with its principal place of business at Kreekweg 10, 3336LC Zwijndrecht, The Netherlands.

4. Upon information and belief, TurboUSA, Inc. is a corporation organized under the laws of Florida with its principal place of business at 2950 SW 2nd Ave., Ft. Lauderdale, Florida 33315.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement arising under Section 271 of the Patent Act, 35 U.S.C. § 101 *et. seq.* and/or the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.

6. This Court has subject matter jurisdiction over the claims set forth below pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over TurboNed based on TurboNed's purposeful direction of business activities and acts of patent infringement in Florida, including in this District, including TurboNed's offer to sell, sale, and/or importation of infringing articles in and/or into this District.

8. This Court has personal jurisdiction over TurboUSA based on TurboUSA's incorporation, substantial sales, marketing, and advertising in Florida, and TurboUSA's business activities and acts of patent infringement in this District, including TurboUSA's offer to sell, sale, and/or importation of infringing articles in and/or into this District.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) at least based on this Court's personal jurisdiction over TurboNed and TurboUSA in this District.

## BACKGROUND

### *ABB and the Patents-in-Suit*

10. ABB engages in the development, manufacture, sale, and servicing of exhaust gas turbochargers for diesel and gas engines, including engines powering large, ocean-going vessels, and for power plant applications. Marine and power plant applications are among

2

ABB's most important market segments for turbochargers, turbocharger parts, and turbocharger services.

11. Over the years, ABB has invested substantially in research and development in turbocharger technology, including in the areas of thermodynamics, aerodynamics, structural mechanics, blade mechanics and dynamics, and bearing technology and rotor dynamics. ABB has received multiple patents in this field, two of which are at issue in this case: U.S. Patent No. 6,012,901 ("the '901 patent") and U.S. Patent No. 6,024,495 ("the '495 patent").

12. Plaintiff ABB Turbo Systems AG is the owner of the '901 patent, which the United States Patent and Trademark Office duly and lawfully issued on January 11, 2000, and is entitled "Compressor Impeller Fastening for High Speed Turboengines." The '901 patent is valid and enforceable under the United States Patent Laws.

13. Plaintiff ABB Inc. is the exclusive licensee of the '901 patent in the United States in the field of components for exhaust gas turbochargers, and possesses the right to sue for past, current, and future infringement of the '901 patent in that field of use.

14. Plaintiff ABB Turbo Systems AG is the owner of the '495 patent, which the United States Patent and Trademark Office duly and lawfully issued on February 15, 2000, and is entitled "Axial Sliding Bearing." The '495 patent is valid and enforceable under the United States Patent Laws.

15. Plaintiff ABB Inc. is the exclusive licensee of the '495 patent in the United States in the field of components for exhaust gas turbochargers, and possesses the right to sue for past, current, and future infringement of the '495 patent in that field of use.

16. Including since the '901 and '495 patents issued in 2000, ABB has actively manufactured and supplied turbochargers and turbocharger parts worldwide, including in the United States, practicing the inventions claimed in the '901 and '495 patents, and has

engaged in the business of servicing turbochargers using such parts worldwide, including in the United States.

### *TurboNed and TurboUSA*

17. Upon information and belief, Hans Franken established TurboNed in the Netherlands in 1986, after being employed by ABB for approximately 17 years in ABB's turbocharger business.

18. Upon information and belief, TurboNed manufactures, and/or has manufactured, and distributes, and/or has distributed, turbocharger components for ABB turbochargers, and is one of the world's largest suppliers of non-OEM turbocharger spare parts.

19. Upon information and belief, TurboNed traffics in unauthorized copies of ABB turbocharger components, including copies of components that include ABB's patented compressor impeller fastenings embodying ABB's technology claimed in the '901 patent, and ABB's patented axial sliding bearings embodying ABB's technology claimed in the '495 patent.

20. Upon information and belief, as part of its service network, TurboNed has over 30 support stations located throughout the world, which TurboNed supplies with turbocharger parts for the servicing of ABB turbochargers in marine applications such as container ships and other ocean-going vessels, and in stationary power plant applications.

21. Upon information and belief, Mr. Franken established TurboUSA in Florida in the mid-1990s.

22. Upon information and belief, TurboUSA provides turbocharger parts and service to the marine and power plant industries, and is TurboNed's support station in the United States, including by using turbocharger parts sourced from TurboNed, including compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, and ABB's patented axial sliding bearings embodying ABB's invention claimed in the '495 patent.

TurboUSA claims to have the largest inventory of parts suitable for ABB turbochargers in the United States, and holds itself out as a provider of parts, repair, and service for ABB turbochargers in the United States.

23. Upon information and belief, TurboUSA makes, uses, offers to sell, sells, and/or imports unauthorized copies of ABB turbocharger parts, including copies of components that include ABB's patented compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, and ABB's patented axial sliding bearings embodying ABB's invention claimed in the '495 patent.

24. Upon information and belief, TurboNed supplies TurboUSA with some or all of the unauthorized copies of ABB turbocharger parts made, used, offered for sale, sold, and/or imported by TurboUSA, including compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, and ABB's patented axial sliding bearings embodying ABB's invention claimed in the '495 patent.

25. TurboUSA promotes itself and its business by touting that it has a comprehensive computer search database that contains part specifications for most ABB turbochargers.

26. Upon information and belief, TurboUSA's comprehensive computer search database of part specifications for ABB turbochargers contains confidential ABB information, including information regarding ABB's patented compressor impeller fastenings (embodying ABB's invention claimed in the '901 patent) and patented axial sliding bearings (embodying ABB's invention claimed in the '495 patent), as well as information regarding the installation and servicing of these components in marine and other applications.

27. Upon information and belief, TurboUSA hired a former ABB field service engineer, Carlos Mas, in 2008.

28. Immediately prior to Mr. Mas's employment with TurboUSA, and while still employed by ABB, Mr. Mas without authorization downloaded from ABB's computer

systems large amounts of confidential data about ABB's turbochargers and components for and servicing of same.

29. Upon information and belief, TurboUSA obtained some or all of the confidential ABB information that Mr. Mas downloaded without authorization from ABB's computers.

30. Upon information and belief, some or all of the confidential ABB information that Mr. Mas provided to TurboUSA includes confidential information relating to ABB's turbocharger parts embodying one or more claims of the '901 patent and the '495 patent.

31. Upon information and belief, TurboNed and TurboUSA rely on ABB confidential information to manufacture, have manufactured, service, and/or have serviced turbocharger parts including turbocharger parts embodying one or more claims of the '901 patent and the '495 patent.

32. Upon information and belief, TurboNed and TurboUSA have knowledge of the '495 patent, including through the filing of this Complaint, and including as a consequence of legal actions pending in Europe on counterparts of the '495 patent, which would have caused a rational and prudent businessperson, especially given Mr. Franken's extensive employment history with ABB and extensive knowledge of its turbocharger business, to investigate counterpart ABB patents.

33. Upon information and belief, TurboNed and TurboUSA have knowledge of the '901 patent, including through the filing of this Complaint, and including as a consequence of legal actions pending in Europe on counterparts of the '495 patent, which would have caused a rational and prudent businessperson, especially given Mr. Franken's extensive employment history with ABB and extensive knowledge of its turbocharger business, to investigate other ABB patents in areas in which TurboNed and TurboUSA are engaged in business.

## COUNT I: DIRECT INFRINGEMENT OF THE '901 PATENT

34. ABB herein incorporates by reference the allegations of paragraphs 1 – 33.

6

35. Defendants TurboNed and TurboUSA directly infringe one or more claims of the '901 patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling within the United States and/or importing into the United States turbocharger products embodying one or more claims of the '901 patent, including without limitation products designated "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000."

36. Upon information and belief, Defendants TurboNed and TurboUSA's acts of infringement are willful.

37. Defendants TurboNed and TurboUSA's acts of infringement of the '901 patent have caused damage to ABB, and ABB is entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

38. The damage caused by Defendants TurboNed and TurboUSA's acts of infringement of the '901 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

## COUNT II: INDIRECT INFRINGEMENT OF THE '901 PATENT

39. ABB herein incorporates by reference the allegations of paragraphs 1 – 38.

40. Defendants TurboNed and TurboUSA actively induce the infringement of one or more claims of the '901 patent under 35 U.S.C. § 271(b), including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000."

41. Upon information and belief, such parts and/or parts having materially the same construction with regard to the claims of the '901 patent, have been installed and operated in ABB turbochargers in the United States.

42. Upon information and belief, such activity on the part of TurboNed includes promoting, selling, and/or offering to sell such parts and/or providing information for servicing ABB turbochargers using such parts, to TurboUSA and/or to third parties in the United States, with knowledge of the '901 patent and with the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the '901 patent.

43. Upon information and belief, such activity on the part of TurboUSA includes promoting, selling, and/or offering to sell such parts and/or to service ABB turbochargers using such parts, to third parties in the United States, with knowledge of the '901 patent and the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the '901 patent.

44. Defendants TurboNed and TurboUSA contributorily infringe one or more claims of the '901 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States and importing into the United States turbocharger parts, including without limitation parts designated "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000," constituting a material part of the claimed invention of the '901 patent, knowing the same to be especially made and adapted for use in the infringement of the '901 patent with its only material use being for installation and operation in an ABB turbocharger, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

45. Upon information and belief, Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement are willful.

46. Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '901 patent have caused damage to ABB, and ABB is

8

entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

47.   The damage caused by Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '901 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

### COUNT III: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '901 PATENT

48.   ABB herein incorporates by reference the allegations of paragraphs 1 – 47.

49.   Upon information and belief, Defendants TurboNed and TurboUSA are engaged in activity directed toward making, offering to sell, selling, importing, and/or using in the United States, including in this District, turbocharger parts embodying one or more claims of the '901 patent under 35 U.S.C. § 271(a), and/or making meaningful preparation for such activity, including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000."

50.   Upon information and belief, Defendants TurboNed and TurboUSA are unwilling to change their respective courses of action with regard to the infringement of the '901 patent, thus giving rise to a dispute regarding such infringement.

51.   ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '901 patent is in violation of 35 U.S.C. § 271(a).

9

52. ABB seeks a declaration that the unauthorized active inducement of making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '901 patent is in violation of 35 U.S.C. § 271(b).

53. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that constitute a material part of the claimed invention of one or more claims of the '901 patent is in violation of 35 U.S.C. § 271(c).

### COUNT IV: DIRECT INFRINGEMENT OF THE '495 PATENT

54. ABB herein incorporates by reference the allegations of paragraphs 1 – 33.

55. Defendant TurboUSA directly infringes one or more claims of the '495 patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling within the United States and importing into the United States turbocharger products embodying one or more claims of the '495 patent, including without limitation products designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

56. Upon information and belief, Defendant TurboUSA's acts of infringement are willful.

57. Defendant TurboUSA's acts of infringement of the '495 patent have caused damage to ABB, and ABB is entitled to recover damages from TurboUSA in an amount subject to proof at trial.

58. The damage caused by Defendant TurboUSA's acts of infringement of the '495 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboUSA is enjoined from further infringement.

### COUNT V: INDIRECT INFRINGEMENT OF THE '495 PATENT

59. ABB herein incorporates by reference the allegations of paragraphs 1-33 and 54-58.

60. Upon information and belief, Defendant TurboNed, acting as a distributor and/or supplier of turbocharger parts for TurboUSA and/or in concert with TurboUSA, has imported into Florida one or more non-ABB turbocharger axial sliding bearings embodying one or more claims of the '495 patent, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

61. Defendants TurboNed and TurboUSA actively induce the infringement of one or more claims of the '495 patent under 35 U.S.C. § 271(b), including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

62. Upon information and belief, such parts and/or parts having materially the same construction with regard to the claims of the '495 patent, have been installed and operated in ABB turbochargers in the United States.

63. Upon information and belief, such activity on the part of TurboNed includes promoting, selling, and/or offering to sell such parts and/or providing information for servicing ABB turbochargers using such parts, to TurboUSA and/or to third parties in the United States, with knowledge of the '495 patent and with the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the '495 patent.

64. Upon information and belief, such activity on the part of TurboUSA includes promoting, selling, and/or offering to sell such parts and/or to service ABB turbochargers using such parts, to third parties in the United States, with knowledge of the '495 patent and the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the '495 patent.

65. Defendants TurboNed and TurboUSA contributorily infringe one or more claims of the '495 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United

States and importing into the United States turbocharger parts, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit," constituting a material part of the claimed invention of the '495 patent, knowing the same to be especially made and adapted for use in the infringement of the '495 patent with its only material use being for installation and operation in an ABB turbocharger, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

66. Upon information and belief, Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement are willful.

67. Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '495 patent have caused damage to ABB, and ABB is entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

68. The damage caused by Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '495 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

### COUNT VI: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '495 PATENT

69. ABB herein incorporates by reference the allegations of paragraphs 1–33 and paragraphs 54–68.

70. Upon information and belief, Defendants TurboNed and TurboUSA are engaged in activity directed toward making, offering to sell, selling, importing, and/or using in the United States, including in this District, turbocharger parts embodying one or more claims of

the '495 patent under 35 U.S.C. § 271(a), and/or making meaningful preparation for such activity, including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

71. Upon information and belief, Defendants TurboNed and TurboUSA are unwilling to change their respective courses of action with regard to the infringement of the '495 patent, thus giving rise to a dispute regarding such infringement.

72. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '495 patent is in violation of 35 U.S.C. § 271(a).

73. ABB seeks a declaration that the unauthorized active inducement of making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '495 patent is in violation of 35 U.S.C. § 271(b).

74. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that constitute a material part of the claimed invention of one or more claims of the '495 patent is in violation of 35 U.S.C. § 271(c).

**PRAYER FOR RELIEF**

WHEREFORE, ABB requests that this Court enter judgment as follows:

A. That Defendants TurboNed and TurboUSA have infringed the '901 patent by, without authority, making, using, selling, and offering for sale in the United States and/or importing into the United States products covered by one or more claims of the '901 patent, and/or by contributing to or inducing such infringement;

B. That Defendants TurboNed and TurboUSA have infringed the '495 patent by, without authority, making, using, selling, and offering for sale in the United States and/or importing into the United States products covered by one or more claims of the '495 patent, and/or by contributing to or inducing such infringement;

C. That Defendants TurboNed's and TurboUSA's infringement of the '901 patent and the '495 patent has been willful;

D. That Defendants TurboNed and TurboUSA and their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from infringing the '901 patent;

E. That Defendants TurboNed and TurboUSA and their affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from infringing the '495 patent;

F. That the Court declare the unauthorized making, using, offering to sell, and/or selling of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '901 patent, and/or the active inducement of the infringement of the '901 patent by Defendants TurboNed and TurboUSA and the contributory infringement of the '901 patent by Defendants TurboNed and TurboUSA by virtue of their offering to sell, selling, and importing of turbocharger parts constituting a material part of the claimed invention of the '901 patent, to be in violation of 35 U.S.C. § 271(a), (b), and/or (c);

G. That the Court declare the unauthorized making, using, offering to sell, and/or selling of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '495 patent, and/or the active inducement of the

14

infringement of the '495 patent by Defendants TurboNed and TurboUSA and the contributory infringement of the '495 patent by Defendants TurboNed and TurboUSA by virtue of their offering to sell, selling, and importing of turbocharger parts constituting a material part of the claimed invention of the '495 patent, to be in violation of 35 U.S.C. § 271(a), (b), and/or (c);

H. That ABB be awarded compensatory damages, together with prejudgment interest and costs;

I. That the Court order an accounting of all infringing sales and activity of Defendants TurboNed and TurboUSA;

J. That ABB be awarded treble damages for willful infringement of the '901 patent and the '495 patent;

K. That this case be adjudged an exceptional case under 35 U.S.C. § 285 in favor of ABB, and that ABB be awarded its costs, attorneys' fees, and all other expenses incurred in this action; and

L. That ABB be awarded such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ABB demands a trial by jury on all issues triable of right by jury.

Dated: June 13, 2012

Respectfully submitted,

PETERSON & MYERS, P.A.

By: /s/ Stephen R. Senn
Stephen R. Senn
Florida Bar No. 0833878
Peterson & Myers, P.A.
P.O. Box 24628
Lakeland, FL 33802
Tel.: (863) 683-6511
Fax: (863) 904-1335
ssenn@petersonmyers.com

Kurt L. Glitzenstein – Trial Counsel
*Pro Hac Vice* Admission Pending
FISH & RICHARDSON P.C.
One Marina Park Dr.
Boston, MA 02210
Tel.: (617) 542-5070
Fax: (617) 542-8906
glitzenstein@fr.com

Jack P. Smith III
Ajit S. Dang
*Pro Hac Vice* Admission Pending
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, 21st Floor
Atlanta, GA 30309
Tel.: (404) 892-5005
Fax: (404) 892-5002
jay.smith@fr.com
dang@fr.com

Attorneys for Plaintiffs,
ABB TURBO SYSTEMS AG and
ABB INC.