UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:13-cv-60394-KMM (Moore/Torres)

ABB TURBO SYSTEMS AG and
ABB INC.,

Plaintiffs,

v.

TURBONED SERVICE B.V.,
TURBOUSA, INC.,
JOHAN HERMAN FRANKEN, and
WILLEM FRANKEN,

Defendants.
_______________________________/

**AMENDED COMPLAINT OF PLAINTIFFS ABB TURBO SYSTEMS AG AND ABB INC. FOR PATENT INFRINGEMENT, DECLARATORY JUDGMENT OF PATENT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, AND CIVIL CONSPIRACY, AND DEMAND FOR JURY TRIAL**

Plaintiffs ABB Turbo Systems AG and ABB Inc. (collectively, "ABB") make the following allegations and averments for their Amended Complaint for Patent Infringement, Declaratory Judgment of Patent Infringement, Trade Secret Misappropriation, and Civil Conspiracy against Defendants TurboNed Service B.V. ("TurboNed"), TurboUSA, Inc. ("TurboUSA"), Johan Herman Franken (also known as "Hans Franken"), and Willem Franken:

**PARTIES**

1. ABB Turbo Systems AG is a corporation organized under the laws of Switzerland, with its principal place of business at Bruggerstrasse 71a, CH-5401 Baden, Switzerland.

2. ABB Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 12040 Regency Parkway, Cary, North Carolina 27518.

3. Upon information and belief, TurboNed Service B.V. is a limited liability company organized under the laws of the Netherlands, with its principal place of business at Kreekweg 10, 3336LC Zwijndrecht, the Netherlands. TurboNed is currently in a state of receivership in the courts of the Netherlands.

4. Upon information and belief, TurboUSA, Inc. is a corporation organized under the laws of Florida, with its principal place of business at 2950 SW 2nd Ave., Ft. Lauderdale, Florida 33315.

5. Upon information and belief, Willem Franken resides at 1867 NE 33rd St., Oakland Park, Florida, 33306-1003.

6. Upon information and belief, Hans Franken resides at Veenweg 67, Nootdorp 2631 CK, the Netherlands.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under Section 271 of the Patent Act, 35 U.S.C. § 101 *et. seq.* and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, for the misappropriation of trade secrets in violation of Fla. Stat. § 688.001 *et seq.*, and for civil conspiracy under Florida law.

8. This Court has subject matter jurisdiction over the claims set forth below pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367(a).

**TurboNed**

9. This Court has personal jurisdiction over TurboNed because TurboNed did not contest the existence of personal jurisdiction in the Middle District of Florida in its Answer and Affirmative Defenses to ABB's original complaint (*see* Dkt. No. 26 ¶7), and further did not oppose transfer of this case from the Middle District of Florida to the Southern District of

Florida, constituting consent to personal jurisdiction in this Court.

10. This Court further has personal jurisdiction over TurboNed based on TurboNed's purposeful direction of business activities, acts of patent infringement, and misappropriation of trade secrets in Florida, including TurboNed's offer to sell, sale, and/or importation of infringing articles in and/or into the Middle District of Florida district, and its subsequent consent to the transfer of this action to the Southern District of Florida.

11. This Court has personal jurisdiction over TurboNed based on TurboNed's disclosure of trade secrets without consent to a Florida corporation, namely, TurboUSA.

12. This Court has personal jurisdiction over TurboNed as a co-conspirator with at least Willem Franken and TurboUSA, who and which are resident Defendants subject to the Court's jurisdiction.

**TurboUSA**

13. This Court has personal jurisdiction over TurboUSA because TurboUSA is resident in this district.

14. Additionally, TurboUSA does not contest the existence of personal jurisdiction over TurboUSA in its Answer and Affirmative Defenses to ABB's original complaint (*see* Dkt. No. 66 ¶8), and has thus consented to personal jurisdiction.

15. This Court further has personal jurisdiction over TurboUSA based on TurboUSA's incorporation, substantial sales, marketing, and advertising in Florida, and TurboUSA's business activities and acts of trade secret misappropriation and patent infringement in this district, including TurboUSA's offer to sell, sale, and/or importation of infringing articles in and/or into this district.

**Willem Franken**

16. This Court has personal jurisdiction over Willem Franken because, upon information and belief, he resides within this district.

**Hans Franken**

17. This Court has personal jurisdiction over Hans Franken under Fla. Stat. §§ 48.193(1)(a)-(b).

18. In particular, ABB's claims arise from: (1) Hans Franken's funding, operating, conducting, engaging in, or carrying on a business in Florida, namely, TurboUSA, personally and/or through an agent; and/or (2) Hans Franken's committing tortious acts in Florida, personally and/or through an agent; and/or (3) Hans Franken's participation in a civil conspiracy with one or more other conspirators (including Willem Franken) who are subject to jurisdiction in this Court as residents of this district.

19. In connection with the tortious conduct alleged herein, Hans Franken directed the activities of his South Florida-based agents and representatives, TurboUSA and/or Willem Franken, and also does business and solicits business in Florida through one or more of these agents.

20. Upon information and belief, Hans Franken effectively controlled and/or continues to effectively control the activities of TurboUSA at all times material to the claims asserted in this Amended Complaint since Hans Franken formed TurboUSA in Florida in the 1990s, either as an officer, director, individual shareholder, and/or owner of Wiandel Holding B.V. ("Wiandel") (which, on information and belief, owns 100 percent of the shares of TurboUSA).

21. Further, at all times material to the claims asserted in this Amended Complaint, TurboUSA was and is a mere instrumentality or agent of Hans Franken. Hans Franken utilized TurboUSA to commit improper acts such as trade secret misappropriation and conspiracy to misappropriate trade secrets, as further described herein.

22. Based on Hans Franken's conduct and/or the conduct of his agents, it was foreseeable that he could reasonably expect to be sued in a Florida court.

23. This Court further has jurisdiction over Hans Franken as a co-conspirator with at least Willem Franken, who is a resident Defendant over whom this Court has personal jurisdiction.

**Venue**

24. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) at least based on this Court's personal jurisdiction over TurboNed, TurboUSA, Willem Franken, and Hans Franken, and insofar as a substantial part of the events giving rise to the claims occurred in this district and pursuant to 28 U.S.C. § 1400(b), because the Defendants have committed acts of patent infringement in this District, and Defendant TurboUSA has a regular and established place of business in this District.

## BACKGROUND

### *ABB, ABB's Patents-in-Suit, and ABB's Trade Secrets*

25. ABB engages in the development, manufacture, sale, and servicing of exhaust gas turbochargers for diesel and gas engines, including engines powering large, ocean-going vessels, and for power plant applications. Marine and power plant applications are among ABB's most important market segments for turbochargers, turbocharger parts, and turbocharger services.

26. Over the years, ABB has invested substantially in research and development in turbocharger technology, including in the areas of thermodynamics, aerodynamics, structural

mechanics, blade mechanics and dynamics, and bearing technology and rotor dynamics. ABB has received multiple patents in this field, two of which are at issue in this case: U.S. Patent No. 6,012,901 ("the '901 patent") and U.S. Patent No. 6,024,495 ("the '495 patent").

27. Plaintiff ABB Turbo Systems AG is the owner of the '901 patent, which the United States Patent and Trademark Office duly and lawfully issued on January 11, 2000, and is entitled "Compressor Impeller Fastening for High Speed Turboengines." The '901 patent is valid and enforceable under the United States Patent Laws.

28. Plaintiff ABB Inc. is the exclusive licensee of the '901 patent in the United States in the field of components for exhaust gas turbochargers, and possesses the right to sue for past, current, and future infringement of the '901 patent in that field of use.

29. Plaintiff ABB Turbo Systems AG is the owner of the '495 patent, which the United States Patent and Trademark Office duly and lawfully issued on February 15, 2000, and is entitled "Axial Sliding Bearing." The '495 patent is valid and enforceable under the United States Patent Laws.

30. Plaintiff ABB Inc. is the exclusive licensee of the '495 patent in the United States in the field of components for exhaust gas turbochargers, and possesses the right to sue for past, current, and future infringement of the '495 patent in that field of use.

31. Including since the '901 and'495 patents issued in 2000, ABB has actively manufactured and supplied turbochargers and turbocharger parts worldwide, including in the United States, practicing the inventions claimed in the '901 and '495 patents, and has engaged in the business of servicing turbochargers using such parts worldwide, including in the United States.

32. In addition to obtaining the '901, '495, and other patents on its compressor impeller fastening technology, axial sliding bearing technology, and other turbocharger technologies,

ABB has created, through the expenditure of extensive time, labor, skill, and money, highly confidential (i) assembly and production drawings, models, and other schematics for and data relating to embodiments of its patented impeller fastening technology taught in the ’901 patent, patented axial sliding bearing technology taught in the ’495 patent, and other turbocharger technologies, (ii) manufacturing and working instructions, with *inter alia* detailed information on the production of ABB turbochargers and parts thereof, and their maintenance and servicing including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (iii) training and other instruction materials, with *inter alia* detailed information destined to educate service engineers on the maintenance and servicing of ABB turbochargers and parts thereof, including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (iv) detailed information on and specifications of a substantial number of individual turbochargers delivered to users and in operation (installed base) including in combination with detailed information on their users, rating plate information and applications, (v) detailed lists (commonly referred to as “price lists”) containing *inter alia* references between part identification number, drawing number, parts specifications and price for every individual ABB turbocharger part, and (vi) other highly confidential information (collectively or in part, “ABB’s Turbocharger Trade Secrets”).

33. ABB’s Turbocharger Trade Secrets include precise dimensions, measurements, tolerances, designs, formulas, compositions, techniques, technical data, and other information vital to the design, manufacture, and servicing of turbocharger parts for ABB turbochargers, including ABB turbocharger parts that practice the inventions claimed in the ’901 and ’495 patents, and such information cannot reasonably be obtained through the process of reverse

engineering of a finished ABB turbocharger part and is not otherwise readily ascertainable. ABB's Turbocharger Trade Secrets further include information to derive parts specifications from a customer name and/or turbocharger rating plate information, including specifications for parts that practice the inventions claimed in the '901 and '495 patents, and such information cannot reasonably be obtained without physical access to the individual installed turbocharger or part thereof.

34. ABB derives significant economic value from ABB's Turbocharger Trade Secrets because they are neither generally known nor readily ascertainable through reverse engineering or otherwise by competing turbocharger part manufacturers, sellers, service providers or installers, all of whom would gain significant economic benefit from the disclosure and use of ABB's Turbocharger Trade Secrets. Such economic benefit would include the ability to manufacture or sell illegal and unauthorized copied parts including copied parts infringing the '901 and '495 patents, and to offer and provide connected services, and/or enhance ABB's competitors' and others' ability to make, sell and install illegal and unauthorized copied parts including copied parts infringing the '901 and '495 patents, and to offer and provide connected services.

35. ABB's Turbocharger Trade Secrets are the subject of significant efforts to maintain their secrecy, including imposing confidentiality and nondisclosure obligations on ABB employees that have access to ABB's Turbocharger Trade Secrets, marking documents constituting ABB's Turbocharger Trade Secrets with confidentiality designations and/or other indicia prohibiting the reproduction or dissemination of such documents or information to third parties, restricting physical and electronic access by third parties to ABB's Turbocharger Trade Secrets, and other reasonable measures.

***Defendants' Relationship to One Another***

36. Upon information and belief, Hans Franken established TurboNed in the Netherlands in 1986, after being employed by ABB for approximately 17 years in ABB's turbocharger business.

37. Hans Franken was the majority owner of TurboNed until its sale in 2009 to Fortis Private Equity Holding Nederland B.V. ("Fortis").

38. Hans Franken was president and/or general manager of TurboNed from its founding until approximately the time of its sale in 2009 to Fortis.

39. Upon information and belief, at all times material to the claims alleged in this Complaint, TurboNed was a mere instrumentality and/or alter ego of Hans Franken, which he utilized to engage in wrongful conduct, including trade secret misappropriation and patent infringement.

40. Upon information and belief, TurboNed manufactured, had manufactured, and distributed turbocharger components for ABB turbochargers, and was one of the world's largest suppliers of non-OEM turbocharger spare parts.

41. Upon information and belief, TurboNed trafficked in unauthorized copies of ABB turbocharger components, including copies of components that include ABB's patented compressor impeller fastenings embodying ABB's technology claimed in the '901 patent, and ABB's patented axial sliding bearings embodying ABB's technology claimed in the '495 patent, and including copies of components manufactured with use of ABB's Turbocharger Trade Secrets.

42. Upon information and belief, as part of its service network, TurboNed had over 30 support stations located throughout the world, which TurboNed supplied with turbocharger parts for the servicing of ABB turbochargers in marine applications such as container ships and other ocean-going vessels, and in stationary power plant applications.

43. Upon information and belief, TurboNed supplied TurboUSA with some or all of the unauthorized copies of ABB turbocharger parts made, used, offered for sale, sold, and/or imported by TurboUSA, including compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, axial sliding bearings (and components thereof) embodying ABB's invention claimed in the '495 patent, and other components manufactured with use of ABB's Turbocharger Trade Secrets, and TurboNed provided other of ABB's Turbocharger Trade Secrets to TurboUSA, including without limitation copies of working instructions, and through training of TurboUSA's service engineers.

44. Upon information and belief, TurboNed has and/or had knowledge of the '495 patent, including through the filing of the original Complaint, and including as a consequence of legal actions pending in Europe on counterparts of the '495 patent, which would have caused a rational and prudent businessperson, especially given Hans Franken's extensive employment history with ABB and extensive knowledge of its turbocharger business, to investigate counterpart ABB patents.

45. Upon information and belief, TurboNed has and/or had knowledge of the '901 patent, including through the filing of the original Complaint, and including as a consequence of legal actions pending in Europe on counterparts of the '901 patent, which would have caused a rational and prudent businessperson, especially given Hans Franken's extensive employment history with ABB and extensive knowledge of its turbocharger business, to investigate other ABB patents in areas in which TurboNed and TurboUSA are engaged in business.

46. Upon information and belief, Hans Franken established TurboUSA in Florida in the mid-1990s.

47. Upon information and belief, Hans Franken was an officer of TurboUSA.

48. Upon information and belief, Hans Franken was and/or is a director of TurboUSA.

49. At all times material to the claims alleged in this Complaint, TurboUSA was and is a mere instrumentality and/or alter ego of Hans Franken, which he utilized to engage in wrongful conduct, including trade secret misappropriation and patent infringement.

50. Willem Franken is the son of Hans Franken.

51. Willem Franken is the president of TurboUSA.

52. Willem Franken is a director of TurboUSA.

53. At all times material to the claims alleged in this Complaint, TurboUSA was and is a mere instrumentality and/or alter ego of Willem Franken, which he utilized to engage in wrongful conduct, including trade secret misappropriation and patent infringement.

54. Upon information and belief, in 2009, Wiandel obtained a 100 percent ownership stake in TurboUSA, including by obtaining shares held by Willem Franken.

55. Hans Franken is the sole owner of Wiandel.

56. Prior to Wiandel's becoming the sole owner of TurboUSA, TurboUSA was owned in parts by Hans Franken, Willem Franken, Nestor Nestoros, and a trust established for the benefit of one or more members of the Franken family.

57. Upon information and belief, TurboUSA provides turbocharger parts and service to the marine and power plant industries, and was previously TurboNed's support station in the United States, including by using turbocharger parts sourced from TurboNed, including compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, axial sliding bearings (and components) embodying ABB's invention claimed in the '495 patent, and other components manufactured with use of ABB's Turbocharger Trade Secrets.

58. TurboUSA previously claimed on its company website to have the largest inventory of parts suitable for ABB turbochargers in the United States, and holds itself out as a provider of parts, repair, and service for ABB turbochargers in the United States.

59. Upon information and belief, TurboUSA makes, uses, offers to sell, sells, and/or imports unauthorized copies of ABB turbocharger parts, including copies of components that include ABB's patented compressor impeller fastenings embodying ABB's invention claimed in the '901 patent, axial sliding bearings (and components) embodying ABB's invention claimed in the '495 patent, and other components manufactured with use of ABB's Turbocharger Trade Secrets.

60. Prior to the commencement of this suit, TurboUSA's website included a page claiming that TurboUSA had "developed a comprehensive computer search database that contains part specifications for most ABB turbochargers[.]"

61. Upon information and belief, TurboUSA continues to promote itself and its business by touting that it has a comprehensive computer search database that contains part specifications for most ABB turbochargers.

62. Upon information and belief, TurboUSA's comprehensive computer search database of part specifications for ABB turbochargers contains confidential ABB information, including information regarding ABB's patented compressor impeller fastenings (embodying ABB's invention claimed in the '901 patent) and patented axial sliding bearings (embodying ABB's invention claimed in the '495 patent), as well as information regarding the installation and servicing of these components in marine and other applications. Upon information and belief, such confidential information includes ABB's Turbocharger Trade Secrets.

63. Upon information and belief, TurboUSA has knowledge of the '495 patent, including through the filing of the original Complaint, and including as a consequence of legal actions

pending in Europe on counterparts of the ’495 patent, which would have caused a rational and prudent businessperson, especially given Hans Franken’s and Willem Franken’s extensive knowledge of ABB’s turbocharger business, to investigate counterpart ABB patents.

64. Upon information and belief, TurboUSA has knowledge of the ’901 patent, including through the filing of the original Complaint, and including as a consequence of legal actions pending in Europe on counterparts of the ’901 patent, which would have caused a rational and prudent businessperson, especially given Hans Franken’s and Willem Franken’s extensive knowledge of ABB’s turbocharger business, to investigate other ABB patents in areas in which TurboNed and TurboUSA are engaged in business.

65. Upon information and belief, as part of the agreement governing the sale of TurboNed to Fortis in 2009 (“the TurboNed Sale”), Hans Franken and/or Wiandel were to receive repayment of a multi-million Euro loan if TurboNed met certain earnings requirements following the TurboNed Sale.

66. Upon information and belief, Hans Franken at material times had sufficient control over TurboUSA to influence the prices TurboUSA paid to TurboNed.

67. Upon information and belief, Hans Franken exercised his control over TurboUSA to influence prices that TurboUSA paid to TurboNed for products purchased by TurboUSA from TurboNed, in order to help meet the earnings requirements, including by influencing TurboUSA to pay higher prices to TurboNed than would have resulted from an arms’ length negotiation.

68. In so doing, Hans Franken improved the likelihood of securing repayment of the loans to him and/or Wiandel extended in the course of the TurboNed Sale, to his ultimate personal benefit.

69. Upon information and belief, Hans Franken directed communications into Florida, including via e-mail communications and telephone communications, for the purpose of, in part, influencing TurboUSA's purchasing decisions to enhance TurboNed's earnings following the TurboNed Sale.

***Defendants' Acts of Misappropriation***

70. Upon information and belief, while heading TurboNed, and while effectively controlling TurboUSA, Hans Franken maintained at least one relationship with an ABB employee with access to ABB's Turbocharger Trade Secrets.

71. Upon information and belief, other persons associated with TurboNed maintained at least one relationship with an ABB employee with access to ABB's Turbocharger Trade Secrets.

72. Upon information and belief, Hans Franken communicated with at least one ABB employee with access to ABB's Turbocharger Trade Secrets regarding obtaining ABB's Turbocharger Trade Secrets for disclosure to Hans Franken or others associated with TurboNed, in exchange for consideration including monetary payment.

73. Upon information and belief, other persons associated with TurboNed communicated with at least one ABB employee with access to ABB's Turbocharger Trade Secrets regarding obtaining ABB's Turbocharger Trade Secrets for disclosure to persons associated with TurboNed, in exchange for consideration including monetary payment.

74. Upon information and belief, Hans Franken's and TurboNed's interest in obtaining ABB's Turbocharger Trade Secrets was prompted, at least in part, by TurboNed's inability to obtain such information lawfully, such as by reverse-engineering spare parts manufactured by ABB for its turbocharger products.

75. Upon information and belief, on repeated occasions, Hans Franken asked employees of TurboNed to travel to Switzerland to meet an employee of ABB.

76. Upon information and belief, on at least two occasions, a TurboNed employee carried an envelope containing money to be given to an employee of ABB in exchange for confidential information about ABB's products.

77. Upon information and belief, this information included ABB's Turbocharger Trade Secrets.

78. Upon information and belief, at least one of these exchanges occurred in the garage of a hotel in Zurich, Switzerland.

79. Upon information and belief, on at least this occasion, the TurboNed employee returned to the Netherlands and delivered ABB's Turbocharger Trade Secrets to Hans Franken.

80. Upon information and belief, on another occasion, Hans Franken instructed a TurboNed employee to travel to Switzerland to retrieve 200 to 300 kilograms of new type bearing housings and original ABB parts from an ABB employee. The TurboNed employee retrieved these materials and returned them to TurboNed's warehouse in the Netherlands.

81. Upon information and belief, there were several exchanges of monetary payment for ABB information, or handovers of ABB information and/or samples containing ABB's Turbocharger Trade Secrets, without the immediate exchange of consideration, over the course of time.

82. Upon information and belief, Hans Franken also made arrangements to pay for information and/or samples obtained from one or several ABB employees through other means, including using electronic means, telephone communications, mail, and physical encounters in Switzerland, Cyprus, and elsewhere.

83. Upon information and belief, this information and/or these samples obtained from one or several ABB employees included ABB's Turbocharger Trade Secrets.

84. Hans Franken and TurboNed obtained ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management.

85. Hans Franken and TurboNed knew that information they received containing ABB's Turbocharger Trade Secrets was obtained by improper means.

86. Upon information and belief TurboNed employee Rogier Draiijer was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

87. Upon information and belief TurboNed employee Chris Aerts was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

88. Upon information and belief TurboNed employee Ton Valken was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

89. Upon information and belief TurboNed employee Erik Erkens was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

90. Upon information and belief TurboNed employee Manon Gort was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

91. Upon information and belief TurboNed employee Koos Halbe was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

92. Upon information and belief TurboNed employee Jolanda Kaptein was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

93. The persons at TurboNed who obtained information containing ABB's Turbocharger Trade Secrets knew or had reason to know that the information was obtained by improper means.

94. Upon information and belief, Willem Franken was knowledgeable of or participated in the procurement of ABB's Turbocharger Trade Secrets from ABB.

95. Upon information and belief, Willem Franken knew or had reason to know that the information he received containing ABB's Turbocharger Trade Secrets was obtained by improper means.

96. Upon information and belief, persons at TurboNed made alterations to at least some of the documents obtained from one or several ABB employees to remove references to ABB on those documents and replace those references with references to TurboNed, both to cover up their true source and to improperly take credit for their origin.

97. Upon information and belief, these altered documents included ABB's Turbocharger Trade Secrets.

98. Upon information and belief, these alterations were undertaken, in part, to conceal TurboNed's possession of confidential ABB information, including ABB's Turbocharger Trade Secrets, during Fortis's due diligence associated with the TurboNed Sale.

99. Upon information and belief, TurboNed relied on ABB's Turbocharger Trade Secrets to manufacture, have manufactured, service, and/or have serviced turbocharger parts including turbocharger parts embodying one or more claims of the '901 patent and the '495 patent, and to offer and provide services in connection with such parts and/or on ABB Turbochargers.

100. Upon information and belief, Hans Franken directed communications into Florida, including to Willem Franken and TurboUSA, including email communications, telephone communications, and facsimile communications, relating to the disclosure and/or use of ABB's Turbocharger Trade Secrets.

101. Upon information and belief, Hans Franken and TurboNed disclosed ABB's Turbocharger Trade Secrets obtained from one or several ABB employees to persons associated with TurboUSA in Florida, including Willem Franken.

102. Upon information and belief, Hans Franken continues to disclose ABB's Turbocharger Trade Secrets obtained from one or several ABB employees to persons associated with TurboUSA in Florida.

103. Upon information and belief, Hans Franken used and continues to use ABB's Turbocharger Trade Secrets obtained from one or several ABB employees to benefit TurboUSA in Florida.

104. Upon information and belief, Willem Franken disclosed and continues to disclose ABB's Turbocharger Trade Secrets obtained from one or several ABB employees to persons associated with TurboUSA in Florida.

105. Upon information and belief, Willem Franken used and continues to use information obtained from one or several ABB employees to benefit TurboUSA in Florida.

106. The persons at TurboUSA who received information containing ABB's Turbocharger Trade Secrets knew or had reason to know that the information was obtained by improper means.

107. Defendants obtained ABB's Turbocharger Trade Secrets without the knowledge or consent of ABB's management.

108. Upon information and belief, the disclosure of ABB's Turbocharger Trade Secrets to persons associated with TurboNed included the disclosure of original assembly and production drawings of ABB turbocharger parts embodying the inventions of the '901 patent and/or '495 patent, in addition to other confidential information relating to ABB turbocharger parts embodying the inventions of the '901 patent and/or '495 patent, detailed parts specifications of

ABB turbochargers installed in the field, as well as other information containing ABB’s Turbocharger Trade Secrets.

109. Upon information and belief, the disclosure of ABB’s Turbocharger Trade Secrets to persons associated with TurboUSA in Florida included the disclosure of original assembly and production drawings of ABB turbocharger parts embodying the inventions of the ’901 patent and/or ’495 patent, in addition to other confidential information relating to ABB turbocharger parts embodying the inventions of the ’901 patent and/or ’495 patent, detailed parts specifications of ABB turbochargers installed in the field, as well as other information containing ABB’s Turbocharger Trade Secrets.

110. Upon information and belief, TurboUSA's interest in receiving ABB's Turbocharger Trade Secrets was prompted, at least in part, by TurboUSA's inability to obtain such information lawfully, such as by reverse-engineering certain spare parts manufactured by ABB for its turbocharger products.

111. Upon information and belief, Hans Franken and Willem Franken also obtained ABB’s Turbocharger Trade Secrets from ABB employees located in Florida.

112. Upon information and belief, other personnel associated with TurboNed and TurboUSA also obtained ABB’s Turbocharger Trade Secrets from ABB employees located in Florida.

113. Upon information and belief, TurboNed disclosed and used ABB’s Turbocharger Trade Secrets in Florida and elsewhere in furtherance of infringement of the ’901 and ’495 patents, and in the provision of services related to products embodying the inventions of the ’901 and ’495 patents and other ABB turbocharger parts.

114. Upon information and belief, TurboUSA used and continues to use ABB’s Turbocharger Trade Secrets in furtherance of infringement of the ’901 and ’495 patents, and in the provision of

services related to products embodying the inventions of the ’901 and ’495 patents and other ABB turbocharger parts.

115. Upon information and belief, TurboUSA hired a former ABB field service engineer, Carlos Mas, in 2008.

116. Immediately prior to Mr. Mas’s employment with TurboUSA, and while still employed by ABB, Mr. Mas, without authorization, downloaded from ABB’s computer systems large amounts of confidential data about ABB’s turbochargers and components for and servicing of same.

117. Upon information and belief, TurboUSA obtained some or all of the confidential ABB information that Mr. Mas downloaded without authorization from ABB’s computers.

118. Upon information and belief, some or all of the confidential ABB information that Mr. Mas provided to TurboUSA includes confidential information relating to ABB’s turbocharger parts embodying one or more claims of the ’901 patent and the ’495 patent.

119. Upon information and belief, TurboUSA relies and has relied on ABB’s Turbocharger Trade Secrets to manufacture, have manufactured, service, and/or have serviced ABB Turbochargers, including using turbocharger parts including turbocharger parts embodying one or more claims of the ’901 patent and the ’495 patent, and/or components manufactured with use of ABB’s Turbocharger Trade Secrets, and to offer and provide connected services.

## COUNT I: DIRECT INFRINGEMENT OF THE ’901 PATENT

120. ABB herein incorporates by reference the allegations of paragraphs 1 – 119.

121. Defendants TurboNed and TurboUSA directly infringe one or more claims of the ’901 patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling within the United States and/or importing into the United States turbocharger products embodying one or

more claims of the ’901 patent, including without limitation products designated “Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2” and “TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000.”

122. Upon information and belief, Defendants TurboNed and TurboUSA’s acts of infringement are willful.

123. Defendants TurboNed and TurboUSA’s acts of infringement of the ’901 patent have caused damage to ABB, and ABB is entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

124. The damage caused by Defendants TurboNed and TurboUSA’s acts of infringement of the ’901 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

**COUNT II: INDIRECT INFRINGEMENT OF THE ’901 PATENT**

125. ABB herein incorporates by reference the allegations of paragraphs 1-119.

126. Defendants TurboNed and TurboUSA actively induce the infringement of one or more claims of the ’901 patent under 35 U.S.C. § 271(b), including by engaging in activity in connection with turbocharger parts, including without limitation parts designated “Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2” and “TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000.”

127. Upon information and belief, such parts and/or parts having materially the same construction with regard to the claims of the ’901 patent, have been installed and operated in ABB turbochargers in the United States.

128. Upon information and belief, such activity on the part of TurboNed includes promoting, selling, and/or offering to sell such parts and/or providing information for servicing ABB turbochargers using such parts, to TurboUSA and/or to third parties in the United States, with knowledge of the ’901 patent and with the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the ’901 patent.

129. Upon information and belief, such activity on the part of TurboUSA includes promoting, selling, and/or offering to sell such parts and/or to service ABB turbochargers using such parts, to third parties in the United States, with knowledge of the ’901 patent and the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the ’901 patent.

130. Defendants TurboNed and TurboUSA contributorily infringe one or more claims of the ’901 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States and importing into the United States turbocharger parts, including without limitation parts designated “Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2” and “TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000,” constituting a material part of the claimed invention of the ’901 patent, knowing the same to be especially made and adapted for use in the infringement of the ’901 patent with its only material use being for installation and operation in an ABB turbocharger, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

131. Upon information and belief, Defendants TurboNed and TurboUSA’s acts of inducing infringement and contributory infringement are willful.

132. Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '901 patent have caused damage to ABB, and ABB is entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

133. The damage caused by Defendants TurboNed and TurboUSA's acts of inducing infringement and contributory infringement of the '901 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

## COUNT III: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '901 PATENT

134. ABB herein incorporates by reference the allegations of paragraphs 1-119.

135. Upon information and belief, Defendants TurboNed and TurboUSA are engaged in activity directed toward making, offering to sell, selling, importing, and/or using in the United States, including in this District, turbocharger parts embodying one or more claims of the '901 patent under 35 U.S.C. § 271(a), and/or making meaningful preparation for such activity, including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Compressor wheel L 77-A30 p/n 25000 new Spec. CR1 CV20 CT40 TQ2" and "TPL77 CV20 CT40 CR1 KV15 TQ02 Compressor Wheel p/n 25000."

136. Upon information and belief, Defendants TurboNed and TurboUSA are unwilling to change their respective courses of action with regard to the infringement of the '901 patent, thus giving rise to a dispute regarding such infringement.

137. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '901 patent is in violation of 35 U.S.C. § 271(a).

138. ABB seeks a declaration that the unauthorized active inducement of making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the ’901 patent is in violation of 35 U.S.C. § 271(b).

139. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that constitute a material part of the claimed invention of one or more claims of the ’901 patent is in violation of 35 U.S.C. § 271(c).

**COUNT IV: DIRECT INFRINGEMENT OF THE ’495 PATENT**

140. ABB herein incorporates by reference the allegations of paragraphs 1-119.

141. Defendant TurboUSA directly infringes one or more claims of the ’495 patent under 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling within the United States and importing into the United States turbocharger products embodying one or more claims of the ’495 patent, including without limitation products designated “Spare Part Kit 3A” and/or “Service Kit 3A” and/or “[part number] 97084” and/or “Axial Bearing Kit.”

142. Upon information and belief, Defendant TurboUSA’s acts of infringement are willful.

143. Defendant TurboUSA’s acts of infringement of the ’495 patent have caused damage to ABB, and ABB is entitled to recover damages from TurboUSA in an amount subject to proof at trial.

144. The damage caused by Defendant TurboUSA’s acts of infringement of the ’495 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboUSA is enjoined from further infringement.

## COUNT V: INDIRECT INFRINGEMENT OF THE '495 PATENT

145. ABB herein incorporates by reference the allegations of paragraphs 1-119.

146. Upon information and belief, Defendant TurboNed, acting as a distributor and/or supplier of turbocharger parts for TurboUSA and/or in concert with TurboUSA, has imported into Florida one or more non-ABB turbocharger axial sliding bearings embodying one or more claims of the '495 patent, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

147. Defendants TurboNed and TurboUSA actively induce the infringement of one or more claims of the '495 patent under 35 U.S.C. § 271(b), including by engaging in activity in connection with turbocharger parts, including without limitation parts designated "Spare Part Kit 3A" and/or "Service Kit 3A" and/or "[part number] 97084" and/or "Axial Bearing Kit."

148. Upon information and belief, such parts and/or parts having materially the same construction with regard to the claims of the '495 patent, have been installed and operated in ABB turbochargers in the United States.

149. Upon information and belief, such activity on the part of TurboNed includes promoting, selling, and/or offering to sell such parts and/or providing information for servicing ABB turbochargers using such parts, to TurboUSA and/or to third parties in the United States, with knowledge of the '495 patent and with the intent and knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the '495 patent.

150. Upon information and belief, such activity on the part of TurboUSA includes promoting, selling, and/or offering to sell such parts and/or to service ABB turbochargers using such parts, to third parties in the United States, with knowledge of the '495 patent and the intent and

knowledge that such parts infringe, and when installed and operated in an ABB turbocharger infringe, the ’495 patent.

151. Defendants TurboNed and TurboUSA contributorily infringe one or more claims of the ’495 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States and importing into the United States turbocharger parts, including without limitation parts designated “Spare Part Kit 3A” and/or “Service Kit 3A” and/or “[part number] 97084” and/or “Axial Bearing Kit,” constituting a material part of the claimed invention of the ’495 patent, knowing the same to be especially made and adapted for use in the infringement of the ’495 patent with its only material use being for installation and operation in an ABB turbocharger, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

152. Upon information and belief, Defendants TurboNed and TurboUSA’s acts of inducing infringement and contributory infringement are willful.

153. Defendants TurboNed and TurboUSA’s acts of inducing infringement and contributory infringement of the ’495 patent have caused damage to ABB, and ABB is entitled to recover damages from each of TurboNed and TurboUSA in amounts subject to proof at trial.

154. The damage caused by Defendants TurboNed and TurboUSA’s acts of inducing infringement and contributory infringement of the ’495 patent include irreparable harm to ABB and its business, and ABB and its business will continue to suffer irreparable harm for which there is no adequate remedy at law unless TurboNed and TurboUSA are enjoined from further infringement.

**COUNT VI: DECLARATORY JUDGMENT**
**OF INFRINGEMENT OF THE ’495 PATENT**

155. ABB herein incorporates by reference the allegations of paragraphs 1-119.

156. Upon information and belief, Defendants TurboNed and TurboUSA are engaged in activity directed toward making, offering to sell, selling, importing, and/or using in the United States, including in this District, turbocharger parts embodying one or more claims of the ’495 patent under 35 U.S.C. § 271(a), and/or making meaningful preparation for such activity, including by engaging in activity in connection with turbocharger parts, including without limitation parts designated “Spare Part Kit 3A” and/or “Service Kit 3A” and/or “[part number] 97084” and/or “Axial Bearing Kit.”

157. Upon information and belief, Defendants TurboNed and TurboUSA are unwilling to change their respective courses of action with regard to the infringement of the ‘495 patent, thus giving rise to a dispute regarding such infringement.

158. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the ’495 patent is in violation of 35 U.S.C. § 271(a).

159. ABB seeks a declaration that the unauthorized active inducement of making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the ’495 patent is in violation of 35 U.S.C. § 271(b).

160. ABB seeks a declaration that the unauthorized making, using, offering to sell, selling, and/or importing of turbocharger parts by Defendants TurboNed and TurboUSA that constitute a material part of the claimed invention of one or more claims of the ’495 patent is in violation of 35 U.S.C. § 271(c).

## COUNT VII: MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS

161. ABB herein incorporates by reference the allegations of paragraphs 1-119.

162. ABB's Turbocharger Trade Secrets comprise highly confidential (i) assembly and production drawings, models, and other schematics for and data relating to embodiments of its patented impeller fastening technology, patented axial sliding bearing technology, and other turbocharger technologies, (ii) manufacturing and working instructions, with *inter alia* detailed information on the production of ABB turbochargers and parts thereof, and their maintenance and servicing including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (iii) training and other instruction materials, with *inter alia* detailed information destined to educate service engineers on the maintenance and servicing of ABB turbochargers and parts thereof, including process information for disassembly and re-assembly of ABB turbochargers and detailed information on components and their purpose and design, (iv) detailed information on and specifications of a substantial number of individual turbochargers delivered to users and in operation (installed base) including in combination with detailed information on their users, rating plate information and applications, (v) detailed lists (commonly referred to as "price lists") containing *inter alia* references between part identification number, drawing number, parts specifications and price for every individual ABB turbocharger part, and (vi) other highly confidential information. ABB's Turbocharger Trade Secrets include precise and irreproducible dimensions, measurements, designs, formulas, compositions, techniques, tolerances, technical data, and other information vital to the design, manufacture, and servicing of turbocharger parts for ABB turbochargers, including ABB turbocharger parts that practice the inventions claimed in the '901 and '495 patents.

163. ABB's Turbocharger Trade Secrets are the subject of significant efforts to maintain their secrecy, including imposing confidentiality and nondisclosure obligations on ABB employees

that have access to ABB's Turbocharger Trade Secrets, marking documents constituting ABB's Turbocharger Trade Secrets with confidentiality designations and/or other indicia prohibiting the reproduction or dissemination of such documents or information to third parties, restricting physical and electronic access by third parties to ABB's Turbocharger Trade Secrets, and other reasonable measures.

164. ABB derives significant and independent economic value from ABB's Turbocharger Trade Secrets because they are neither generally known nor readily ascertainable through reverse engineering or otherwise by competing turbocharger part manufacturers, sellers, service providers or installers, all of whom would gain significant economic benefit from the disclosure and use of ABB's Turbocharger Trade Secrets. Such economic benefit would include the ability of ABB's competitors and others to manufacture or sell illegal and unauthorized copied parts including copied parts infringing the '901 and '495 patents, and to offer and provide connected services, and/or enhance ABB's competitors and others' ability to make, sell, and install or service illegal and unauthorized copied parts, including copied parts infringing the '901 and '495 patents, and to offer and provide connected services.

165. ABB's Turbocharger Trade Secrets constitute "trade secrets" under Florida Statute § 688.002(4).

166. Defendants TurboNed, TurboUSA, Hans Franken, and Willem Franken have misappropriated and continue to misappropriate ABB's Turbocharger Trade Secrets in Florida under Florida Statute § 688.002(2)(a) and (b).

167. Defendant TurboUSA has misappropriated and continues to misappropriate ABB's Turbocharger Trade Secrets including by (1) acquiring ABB's Turbocharger Trade Secrets knowing that they were acquired by espionage, bribery, inducement of a breach of a duty to

maintain secrecy, and other improper means, and (2) using ABB's Turbocharger Trade Secrets for the sale and/or servicing of turbocharger parts for ABB turbochargers knowing that they were acquired by espionage, bribery, inducement of a breach of a duty to maintain secrecy, and other improper means.

168. Defendant TurboNed has misappropriated ABB's Turbocharger Trade Secrets including by (1) disclosing ABB's Turbocharger Trade Secrets to TurboUSA in Florida without consent and knowing that they were acquired by improper means; and (2) using ABB's Turbocharger Trade Secrets for commercial gain in the United States knowing that they were acquired by improper means.

169. Defendant Hans Franken has misappropriated and continues to misappropriate ABB's Turbocharger Trade Secrets including by (1) disclosing ABB's Turbocharger Trade Secrets to TurboUSA in Florida without consent and knowing that they were acquired by improper means; and (2) using ABB's Turbocharger Trade Secrets for commercial gain in the United States knowing that they were acquired by improper means.

170. Defendant Willem Franken has misappropriated and continues to misappropriate ABB's Turbocharger Trade Secrets including by (1) disclosing ABB's Turbocharger Trade Secrets to TurboUSA in Florida without consent and knowing or having reason to know that they were acquired by improper means; and (2) using ABB's Turbocharger Trade Secrets for commercial gain in the United States knowing that they were acquired by improper means.

171. Defendants TurboUSA, Hans Franken, and Willem Franken willfully and maliciously misappropriated, continue to misappropriate, and threaten to further misappropriate ABB's Turbocharger Trade Secrets.

172. Defendant TurboNed willfully and maliciously misappropriated ABB's Turbocharger Trade Secrets, and is in a position to continue to misappropriate and threaten to further misappropriate ABB's Turbocharger Trade Secrets.

173. Defendants TurboNed, TurboUSA, Hans Franken, and Willem Franken's willful and malicious misappropriation of ABB's Turbocharger Trade Secrets irreparably harms ABB and its business, and ABB and its business will continue to suffer irreparable harm, including by disclosure and/or use of ABB's Turbocharger Trade Secrets, for which there is no adequate remedy at law, unless Defendants, their officers, agents, employees, attorneys, and all persons acting in concert with them are enjoined from further misappropriation pursuant to Florida Statute § 688.003. ABB is further entitled to an order requiring Defendants TurboNed, TurboUSA, Hans Franken, and Willem Franken, their officers, agents, employees, attorneys, and all persons acting in concert with them to return to ABB any and all of ABB's Turbocharger Trade Secrets and any copies of documents or things describing the same pursuant to § 688.003(3).

174. ABB is entitled to monetary damages from Defendants TurboNed, TurboUSA, Hans Franken, and Willem Franken in excess of $75,000, under Florida Statute § 688.004(1), and exemplary damages for their willful and malicious misappropriation under § 688.004(2).

175. ABB is entitled to an award of reasonable attorney's fees based on Defendants TurboNed, TurboUSA, Hans Franken, and Willem Franken's willful and malicious misappropriation under Florida Statute § 688.005.

**COUNT VIII: CIVIL CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS AGAINST ALL DEFENDANTS**

176. ABB herein incorporates by reference the allegations of paragraphs 1-119 and 162-175.

177. Defendants acted in concert to misappropriate ABB's Turbocharger Trade Secrets.

178. Specifically, as set forth in Paragraphs 70-119, Defendants unlawfully acquired, disclosed and/or used misappropriated ABB Turbocharger Trade Secrets, including to make, have made, use (including in servicing operations), sell, offer for sale, and/or import products, including turbocharger components, and including products that infringe the ’901 patent and/or the ’495 patent.

179. The relationships between and among Defendants were both familial and financial. Hans Franken, his son Willem Franken, and the companies that they founded, owned, directed, and/or controlled, including TurboNed and TurboUSA, participated in the conspiracy with the objective of financial gain for the Franken family.

180. Defendants’ conspiracy has caused and continues to cause actual harm to ABB. ABB is thus entitled to monetary damages from the Defendants’ conspiracy to commit trade secret misappropriation, as well as a permanent injunction forbidding future conspiratorial misconduct, as well as an award of attorney’s fees.

## PRAYER FOR RELIEF

WHEREFORE, ABB requests that this Court enter judgment as follows:

A. That Defendants TurboNed and TurboUSA have infringed the ’901 patent by, without authority, making, using, selling, and offering for sale in the United States and/or importing into the United States products covered by one or more claims of the ’901 patent, and/or by contributing to or inducing such infringement;

B. That Defendants TurboNed and TurboUSA have infringed the ’495 patent by, without authority, making, using, selling, and offering for sale in the United States and/or importing into the United States products covered by one or more claims of the ’495 patent, and/or by contributing to or inducing such infringement;

C. That Defendants TurboNed and TurboUSA's infringement of the '901 patent and the '495 patent has been willful;

D. That Defendants TurboNed and TurboUSA and their respective affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from infringing the '901 patent;

E. That Defendants TurboNed and TurboUSA and their respective affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from infringing the '495 patent;

F. That the Court declare the unauthorized making, using, offering to sell, and/or selling of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '901 patent, and/or the active inducement of the infringement of the '901 patent by Defendants TurboNed and TurboUSA and the contributory infringement of the '901 patent by Defendants TurboNed and TurboUSA by virtue of their offering to sell, selling, and importing of turbocharger parts constituting a material part of the claimed invention of the '901 patent, to be in violation of 35 U.S.C. § 271(a), (b), and/or (c);

G. That the Court declare the unauthorized making, using, offering to sell, and/or selling of turbocharger parts by Defendants TurboNed and TurboUSA that embody one or more claims of the '495 patent, and/or the active inducement of the infringement of the '495 patent by Defendants TurboNed and TurboUSA and the contributory infringement of the '495 patent by Defendants TurboNed and TurboUSA by virtue of their offering to sell, selling, and importing of turbocharger parts constituting a material part of the claimed invention of the '495 patent, to be

in violation of 35 U.S.C. § 271(a), (b), and/or (c);That the Court order an accounting of all infringing sales and activity of Defendants TurboNed and TurboUSA;

H. That ABB be awarded treble damages for willful infringement of the ’901 patent and the ’495 patent;

I. That this case be adjudged an exceptional case under 35 U.S.C. § 285 in favor of ABB, and that ABB be awarded its costs, attorneys’ fees, and all other expenses incurred in this action;

J. That Defendants be ordered to pay ABB double damages for willful and malicious misappropriation of ABB’s Turbocharger Trade Secrets under Florida Statute § 688.004(2);

K. That Defendants be ordered to pay ABB’s attorneys’ fees for willful and malicious misappropriation of ABB’s Turbocharger Trade Secrets under Florida Statute § 688.005;

L. That Defendant TurboNed and its respective affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from using, disclosing, copying, publishing, transferring, or selling ABB's Turbocharger Trade Secrets, or any derivative thereof, in the United States, and restraining them from obtaining any commercial advantage or unjust enrichment in the United States from the misappropriation of ABB's Turbocharger Trade Secrets and derivatives;

M. That Defendant TurboUSA and its respective affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and any and all those acting for any of them or on their behalf, or acting in concert or participation with them, be permanently enjoined from using, disclosing, copying, publishing, transferring, or selling ABB’s Turbocharger Trade Secrets, or any derivative thereof, and restraining them from obtaining any

commercial advantage or unjust enrichment from the misappropriation of ABB's Turbocharger Trade Secrets and derivatives;

N. That Defendant Hans Franken and his affiliates, agents, representatives, and any and all those acting for him or on his behalf, or acting in concert or in participation with him, be permanently enjoined from using, disclosing, copying, publishing, transferring, or selling ABB's Turbocharger Trade Secrets, or any derivative thereof, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of ABB's Turbocharger Trade Secrets and derivatives.

O. That Defendant Willem Franken and his affiliates, agents, representatives, and any and all those acting for him or on his behalf, or acting in concert or in participation with him, be permanently enjoined from using, disclosing, copying, publishing, transferring, or selling ABB's Turbocharger Trade Secrets, or any derivative thereof, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of ABB's Turbocharger Trade Secrets and derivatives.

P. That the Court enter judgment in ABB's favor and against TurboNed, TurboUSA, Willem Franken, and Hans Franken, jointly and severally, for compensatory damages in an amount to be determined, together with prejudgment and post judgment interest, costs, attorneys' fees, and any other relief deemed appropriate by the Court, resulting from their misappropriation of ABB's trade secrets;

Q. That the Court pierce the corporate veil as to TurboUSA and hold Hans Franken and Willem Franken jointly and severally liable on all claims in this action asserted against TurboUSA;

R. That the Court pierce the corporate veil as to TurboNed and hold Hans Franken jointly and severally liable on all claims in this action asserted against TurboNed;

S. That ABB be awarded compensatory damages, together with prejudgment interest and costs;

T. That Defendants be required to disclose to ABB all recipients of ABB's Turbocharger Trade Secrets as a result of Defendants' wrongful acts;

U. That all Defendants be required to surrender to ABB all confidential information belonging to ABB that is in their possession, custody, or control, and destroy any remaining copies of such information in their possession, custody, or control, and that the Court order the destruction be accomplished in a supervised manner that ensures the removal of such data from all computer readable medium, including the Internet accounts residing on third-party Internet services providers; and

V. That ABB be awarded such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ABB demands a trial by jury on all issues triable of right by jury.

Dated: July 12, 2013.

Respectfully submitted,

s/Jorge Espinosa
William R. Trueba, Jr. (Florida Bar No. 117544)
wtrueba@etlaw.com
Jorge Espinosa
Florida Bar No. 779032
Jespinosa@etlaw.com
Espinosa Trueba
1428 Brickell Ave., Suite 100
Miami, FL 33129
Phone: (305) 854-0900
Fax: (855) 854-0900

Kurt L. Glitzenstein – Trial Counsel
*Pro Hac Vice*
Fish & Richardson P.C.
One Marina Park Dr.
Boston, MA 02210
Tel.: (617) 542-5070
Fax: (617) 542-8906
glitzenstein@fr.com

Jack P. Smith III
Ajit S. Dang
*Pro Hac Vice*
Fish & Richardson P.C.
1180 Peachtree St. NE, 21st Floor
Atlanta, GA 30309
Tel.: (404) 892-5005
Fax: (404) 892-5002
jay.smith@fr.com
dang@fr.com

**ATTORNEYS FOR PLAINTIFFS
ABB TURBO SYSTEMS AG AND
ABB INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 12, 2013, I filed the foregoing document with the Clerk of Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified.

By:___s/Jorge Espinosa______
Jorge Espinosa

**SERVICE LIST**

*ABB Turbo Systems AG and ABB, Inc. v. Turboned Service BV and TurboUSA, Inc.*
United States District Court - Southern District of Florida
Case No. 0:13-60394-CV-KMM

Jeffrey Aaron Backman
E-mail : jeffrey.backman@gmlaw.com
Rebecca Faith Bratter
E-mail: rebecca.bratter@gmlaw.com
Richard Wayne Epstein
E-mail: Richard.epstein@gmlaw.com
**Greenspoon Marder, P.A.**
200 East Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301
Tel: 954.491.1120
Fax: 954.213.0140
*Attorneys for Defendant TurboUSA, Inc.*
Via CM/ECF

Christopher P. Borello
E-mail: cborello@fchs.com
Jason M. Dorsky
E-mail: jdorsky@fchs.com
Marc J. Pensabene
E-mail: mpensabene@fchs.com
**Fitzpatrick, Cella, Harper & Scinto**
1290 Avenue of the Americas
New York, NY 10104-3800
Tel.: 212.218.2100
Fax: 212.218.2200
*Attorneys for Defendant Turboned Service B.V.*
Via CM/ECF

Juan Pablo Caceres
Email: pcaceres@butlerpappas.com
Erica Karol Williams
Email: ewilliams@butlerpappas.com
**Butler, Pappas, et al.**
777 S Harbour Island Boulevard
One Harbour Place Suite 500
Tampa, FL 33602
Tel.: 813.281.1900 / Fax: 813.281.0900
*Attorneys for Defendant Turboned Service B.V.*
Via CM/ECF

Jack P. Smith, III (*pro hac vice*)
E-mail: jay.smith@fr.com
Ajit S. Dang (*pro hac vice*)
E-Mail: dang@fr.com
**Fish & Richardson, P.C.**
1180 Peachtree Street, NE
21st Floor
Atlanta, GA 30309
Tel.: 404.892.5005 /
Fax: 404.892.5002
*Attorneys for Plaintiffs ABB Turbo Systems AG and ABB, Inc.*
Via CM/ECF

Kurt L. Glitzenstein (*pro hac vice*)
E-mail: glitzenstein@fr.com
**Fish & Richardson, P.C.**
One Marina Park Drive
Boston, MA 02210
Tel.: 617.542.5070
Fax: 617.542.8906
*Attorneys for Plaintiffs ABB Turbo Systems AG and ABB, Inc.*
Via CM/ECF

William R. Trueba, Jr.
Florida Bar No. 117544
Email: wtrueba@etlaw.com
Jorge Espinosa
Florida Bar No. 779032
Email: Jespinosa@etlaw.com
**ESPINOSA|TRUEBA P.L.**
1428 Brickell Ave., Suite 100
Miami, FL 33131
Tel.: 305.854.0900
Fax: 855.854.0900
*Attorneys for Plaintiffs ABB Turbo Systems AG and ABB, Inc.*
Via CM/ECF